**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE**

**CIVIL ACTION NO. 05-175-DLB**

**TABITHA BENTLEY**                                                                                               **PLAINTIFF**


vs.                               **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                                              **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Tabitha Bentley filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments in May, 2003. (Tr. 73-75, 430-33)[1] Plaintiff alleges she became unable to work on January 20, 2003, due to back pain, asthma, cervical cancer, nerves and depression. (Tr. 56)  Plaintiff's claim was denied initially (tr. 50-53, 435-38) and on reconsideration (tr. 56-58, 440-42).  Plaintiff requested a hearing before an ALJ, which was then held on August 31, 2004, in Hazard, Kentucky. (Tr. 443-69)  On November 18, 2004, ALJ Lawrence ruled that Plaintiff was not entitled to

---

[1] Plaintiff filed prior applications for benefits in 2001 (tr. 67-69, 410-12) and August of 2002 (tr. 70-72, 419-23).  She was denied disability status at the initial stage of these applications (2001 - tr. 44-45, 416-17; 2002 - tr. 46-49, 425-28), and did not seek reconsideration.

disability benefits. (Tr. 20-28) This decision became the final decision of the Commissioner when the Appeals Council denied review on April 25, 2005. (Tr. 9-11)

On June 3, 2005, Plaintiff filed the instant action. The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 21) At Steps 2 and 3, the ALJ found Plaintiff's asthma and cigarette abuse, spondylosis and spondylolisthesis, post-traumatic stress disorder, and obesity to be severe impairments. (Tr. 23) However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform light exertional work; that is, lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The ALJ also found that she could occasionally stoop, crawl, and crouch; that she should only occasionally climb ramps and stairs; and that she should avoid climbing ladders, ropes, or scaffolds. (Tr. 24) Nonexertionally, she cannot be exposed to temperature extremes and humidity and should avoid fumes, odors, dust, and chemicals. She is restricted to jobs that involve minimal interaction with co-workers and the general public, and that do not require extended attention and concentration or have significant changes in work settings. (*Id.*) The ALJ determined that given her RFC, Plaintiff cannot return to her past relevant work as a landscaper, stock person, or cashier. (Tr. 25)

The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff in both the national and regional economies despite her limitations. (Tr. 26) This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question

assuming an individual of Plaintiff's age (35 at the time of the hearing and so a "younger" individual), education (ninth grade, and so a "limited" education), past relevant work experience (no transferable skills), and RFC. (Tr. 466-67)  The VE testified that Plaintiff could perform work inspecting, testing, or sorting at the light exertional level; and as a factory laborer and hand packaging or bench assembly jobs at the sedentary exertional level. (*Id.*)  Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act.  (Tr. 27)

**C.     Analysis**

On appeal, Plaintiff challenges the ALJ's consideration of her mental impairments. Plaintiff notes in particular the ALJ's failure to discuss the psychiatric examination findings of Dr. Stephen Lamb.  By analogy to what is commonly referred to as the "treating physician rule," Plaintiff submits that reversible error occurred when the ALJ failed to articulate in his decision why Dr. Lamb's findings were rejected, with the ALJ instead seeming to adopt in large part the nonexamining opinion of psychological consultant Laura Cutler, Ph.D. (Tr. 336-52)  This, submits Plaintiff, led to presentation of an inaccurate hypothetical to the VE that could not serve as substantial evidence upon which to find Plaintiff not disabled.

In response, the Commissioner points out that the authorities Plaintiff relies upon involved application of the "treating physician rule," but Dr. Lamb was not a treating physician and treating source regulations are not implicated.  The Commissioner submits that the ALJ did note Dr. Lamb's findings, referenced that he considered all of the record medical evidence in his decision, and that "the mental restrictions found by the ALJ were

4

comparable [to] the restrictions suggested by Dr. Lamb." (Doc. #11, p. 12) The Commissioner calls attention to other medical opinion evidence she submits supports the ALJ's assessment of mild to moderate limitations from Plaintiff's mental impairments, including the opinions of two state agency psychologists – Laura Cutler, Ph.D. and Ann Demaree, Ph.D. (tr. 363-78). Although the Commissioner acknowledges that the ALJ's decision did not explain the weight given to these nonexamining medical opinions, she submits this was a *de minimis* regulatory violation amounting to harmless error.

A review of the record and the ALJ's decision reveals that the ALJ's consideration of the mental impairment evidence in this case was inadequate. This error cannot be considered *de minimis,* given the ALJ's *de minimis* discussion of this evidence. A fair portion of the overall record in this case is directed to Plaintiff's nonphysical complaints. *See* Plaintiff's 1999 treatment records (Exs. 1F & 2F, tr. 197-202); Plaintiff's 2002 and 2003 treatment records from Kentucky River Community Care (Ex. 4F, tr. 218-35, and Ex. 18F, tr. 398-409); Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms completed in October, 2002, by nonexamining psychological consultant Jane Brake, Ph.D. (Ex. 6F, tr. 257-75); July 16, 2003, psychiatric consultative examination by Dr. Stephen B. Lamb (Ex. 11F, tr. 319-23); Psychiatric Review Technique and Mental Residual Functional Capacity Assessment forms completed in September, 2003, by nonexamining psychological consultant Laura Cutler, Ph.D. (Ex. 13F, tr. 336-52) and nonexamining psychological consultant Ann Demaree, Ph.D. (Ex. 15F, tr. 363-79).

What consideration and weight the ALJ gave this evidence is not articulated. The decision's discussion of these medical records and opinions is a limited one. The ALJ briefly notes Plaintiff's treatment at Kentucky River Community Care. (Tr. 23) He also notes

the evaluation findings of Dr. Stephen Lamb that she suffers from post-traumatic stress disorder, is able to understand simple instructions but unable to concentrate well, would not likely do well in social contexts and is unable to cope well with typical work setting pressures and stressors. (*Id.*)  The ALJ makes no other reference to Dr. Lamb's evaluation or his consideration of Dr. Lamb's opinions.  Following one additional reference that "[t]he undersigned has considered all the medical evidence in the record and is aware of the claimant's psychiatric problems and coincidental drug use in 1999" (tr. 24), the ALJ proceeds to find Plaintiff's mental residual functional capacity as restricting her to jobs not requiring extended attention and concentration, requiring minimal interaction with co-workers and the general public, and not requiring significant changes in work settings (*id.*).

Social Security regulations provide for a particular technique to be employed by an ALJ when evaluating mental impairments.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  This technique includes appropriate documentation by the ALJ.  *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).  The ALJ's decision in this case states:

> Considering the claimant's mental health treatment and her reported daily activities, the undersigned finds that the claimant's impairments impose mild restriction on her daily activities, mild to moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace. There are no episodes of decompensation, defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning" and no evidence that she is unable to function appropriately outside of her home environment.

(Tr. 24)  While the ALJ reports his conclusions in the required areas, the regulation also dictates that "[t]he decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(2),

6

416.920a(e)(2).  Aside from the evidence noted by the ALJ in his decision as outlined hereinabove, no other mental impairment medical evidence or discussion of such evidence was accounted for by the ALJ.

Moreover, this lack of discussion also means that the ALJ decision falls short of 20 C.F.R. §§ 404.1527 and 416.927, the provisions for evaluating medical opinion evidence. These regulations provide that every medical opinion, regardless of source, is evaluated. Unless a treating physician's opinions are given controlling weight, which is not at issue in this case, an ALJ must apply certain factors in determining what weight to give the medical opinion; namely, whether the opinion source examined the claimant, length and extent of treatment relationship if one existed, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the source.  20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Wilson v. Comm'r of Social Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  The ALJ's decision with respect to Plaintiff's mental impairments fails to provide a discussion of the factors provided for in the regulations.

> When an [ALJ] considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the [ALJ] will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.  Unless the treating source's opinion is given controlling weight, the [ALJ] **must explain in the decision** the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

*Id.* §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (emphasis added).  Since in this case there was no treating physician opinion evidence given controlling weight, the ALJ should have

7

discussed his consideration of the mental impairment medical opinions in his decision, as called for by the regulations.

The Commissioner acknowledges the ALJ failed to explain what weight he gave the opinions relating to Plaintiff's mental impairments and why, but maintains such failure is not reversible error. In *Wilson v. Commissioner of Social Security,* for example, the Sixth Circuit noted certain exceptions to the requirement that an ALJ expressly address treating physician opinions in the decision. One of these is when the decision evidences that the ALJ essentially adopted the treating source opinions, even though not explicitly so stating. *Wilson,* 378 F.3d at 547. The Commissioner suggests that despite the ALJ's omission, his findings as to Plaintiff's restrictions resulting from her mental impairments were comparable to the restrictions opined by Dr. Lamb.

The circumstances in this case are not analogous to the exception noted in *Wilson*. As Plaintiff explains in her filing, the VE was presented with an alternative hypothetical incorporating the limitations assessed by Dr. Lamb.

> Q. All right. If you'll assume the same exertional limitations that I gave you in the last hypothetical, but now assume as Dr. Lamb has indicated in the last, next to the last page of his report, Exhibit 11F. He indicates that this person is unable to concentrate and is not likely to be able to complete tasks in a normal amount of time. She would not be able to function well around supervisors or coworkers or the general public, and she's unable to deal with the work stress. Based on those assumptions would there be any jobs such a person could perform?
>
> A. Nothing.

(Tr. 467) The restrictions opined by Dr. Lamb are not comparable to those found by the ALJ, as evidenced by the ALJ's posing this alternative hypothetical. Although the ALJ recognized a difference and therefore questioned the VE about Dr. Lamb's opinions, for

whatever reason he did not explain in his decision his rationale for ultimately rejecting those opinions.

The Commissioner maintains that other, substantial evidence still supports the ALJ's mental RFC determination. She points to the opinions of the nonexamining psychological consultants (which the Commissioner acknowledges were also not discussed by the ALJ in his decision) as being consistent with and supportive of the mental impairment restrictions imposed by the ALJ. The Commissioner reviews some of the other record evidence from treating providers as supportive of the mild to moderate restrictions found by the ALJ. Nevertheless, the Court cannot excuse as harmless the failure to note and assess this evidence in the written decision. This is because Plaintiff also points to treating evidence in the record that she maintains is consistent with and supportive of the more restrictive limitations given by Dr. Lamb. And she points to nonexamining psychological consultant Cutler's failure to explain her rejection of psychiatrist Lamb's opinions, aside from a conclusory comment that they are inconsistent with the overall record. (Tr. 351) The interpretation of this evidence falls within the province and responsibility of the ALJ, not this Court.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #11) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 29th day of August, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-175-Bentley.MOO.wpd